The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr., and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. Accordingly, the Full Commission affirms and adopts the Deputy Commissioners decision and enters the following Opinion and Award.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 30 November 1999 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is a dully-self insured and Gallager Bassett Services is the servicing agent.
4. Plaintiff has received compensation for an occupational disease which was diagnosed on 13 August 1991.
5. Plaintiff received temporary total disability compensation from 11 July 1995 through 2 August 1998 at a rate of $363.48.
6. Industrial Commission Forms were stipulated into evidence as Stipulated Exhibit 1.
7. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 2. A 27 April 1998 letter to Alan Ward, M.D., was stipulated into evidence as Stipulated Exhibit 3.
8. A 22 May 1998 letter from defense counsel to plaintiffs counsel was stipulated into evidence as Stipulated Exhibit 4.
9. A letter to plaintiffs counsel from defense counsel was stipulated into evidence as Stipulated Exhibit 5.
10. The issues before the undersigned are: (i) whether plaintiffs average weekly wage be based upon a compensation rate on 13 August 1997 versus 15 April 1995; (ii) whether plaintiff is suffering from psychological/psychiatric problems related to her compensable occupational disease which renders her unable to participate in vocational rehabilitation; (iii) whether plaintiff is entitled sanctions for defendants failure to comply with Industrial Commission Rules; (iv) whether Form 24 filed on 17 August 1998 was improvidently entered; and (v) whether defendants are entitled to a credit for overpaying compensation due plaintiff?
 EVIDENTIARY RULINGS
The objections raised at the depositions of John S. Gaul, III, M.D., Russell J. Smith, Ph.D., and W. Alan Ward, M.D. are OVERRULED.
***********
Based upon the competent evidence of record the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing on 30 November 1999, plaintiff was thirty-nine (39) years old and was a high school graduate.
2. On 10 September 1984, plaintiff began working for defendant in its tire manufacturing plant in Charlotte, North Carolina. Plaintiff was healthy with no physical or psychological problems prior to her employment by defendant.
3. Plaintiff contracted de Quervains tenosynovitis in 1991. This was accepted by defendant as compensable and plaintiff was treated with surgical release of both hands by Stephen J. Naso, Jr., M.D.
4. Plaintiff returned to work for defendant on 7 January 1992. Plaintiff continued to work as a tire trimmer. This job requires her to use her hands continuously trimming excess rubber from the tires.
5. By April 1995, the symptoms associated with plaintiffs 1991 de Quervains tenosynovitis has resolved, but she began to experience new types of problems with numbness, pain and swelling in her hands. During this time period her job demands had increased as result of reduced work force. Plaintiff trimmed a tire between eight to ten seconds. The five employees in charge of trimming tires would trim approximately 2,000 tires per person.
6. Defendant-employer accepted liability of plaintiffs occupational disease. However, there was no agreement ever submitted to the Industrial Commission relating to this matter. Plaintiff complained to the plant nurse, Adeline Caldwell. Ms. Caldwell sent plaintiff to John S. Gaul, III, M.D., on 12 July 1995.
7. Dr. Gaul is a Board certified orthopaedic surgeon and the primary physician for plaintiff. Dr. Gaul performed nerve conduction studies which indicated abnormalities for both the right and left hand. Dr. Gaul opined that plaintiff suffered from tendonitis with some degree of carpal tunnel syndrome.
8. While plaintiff was being treated by Dr. Gaul, she became pregnant and developed diabetes. After plaintiffs delivery, she continued to have difficulty with numbness, tingling and symptoms of carpal tunnel syndrome.
9. Dr. Gaul recommended surgical release for carpal tunnel syndrome and ulnar nerve. On 22 May 1996 and 28 August 1996, Dr. Gaul performed surgery on plaintiffs hands. After the surgery, plaintiff continued to have pain and swelling and Dr. Gaul prescribed Relafen.
10. Dr. Gaul had a physical capacity evaluation performed to ascertain plaintiffs limitations. Dr. Gaul indicated plaintiff had lifting restrictions and should not use tools continuously, limiting such activity to one to two-thirds of the hours of her work.
11. On 6 January 1997, Dr. Gaul released plaintiff at maximum medical improvement and gave her a ten (10%) percent permanent partial disability to each of her hands.
12. Based upon plaintiffs restriction, Dr. Gaul approved the fischer cutter job.
13. Dr. Gaul approved the job description for a gate guard on 29 April 1997.
14. Dr. Gaul reviewed the bead utility job and determined this was not appropriate because of the repetitive nature of that job. Dr. Gaul was not forwarded any further job descriptions from defendant.
15. Dr. Gaul determined, and the Full Commission finds as fact that plaintiffs employment with defendant significantly contributed to the development of her bilateral carpal tunnel syndrome in 1995. Furthermore, Dr. Gaul determined and the Full Commission finds as fact that plaintiffs employment with defendant placed her at an increased risk of aggravating, exacerbating or causing the carpal tunnel syndrome as opposed to the general public not so employed.
16. Dr. Gaul indicated the de Quervains tenosynovities was a different problem than the illness plaintiff contracted in 1995.
17. On 11 March 1998, W. Alan Ward, M.D, examined plaintiff. This was an independent medical examination in which Dr. Ward determined there were no residual signs of her bilateral carpal tunnel syndrome or de Quervains stenosing tenosynovitis.
18. Dr. Ward was of the opinion plaintiff was capable of performing fischer cutter job as well as the filler C/U operator job.
19. Plaintiff began treatment with Russell Smith, Ph.D., a psychology in July 1997. Dr. Smith determined plaintiff was having an adjustment disorder with mixed emotional components of both anxiety and depression. Dr. Smith indicated plaintiffs psychological problems were associated with difficulties she was having with her workers compensation claim and her relationship with or lack thereof with defendant.
20. Dr. Smith is of the opinion plaintiff is not able to return to work for the defendant-employer and has recommended plaintiff apply to the South Carolina Vocational Rehabilitation agency to assist her in reeducation and retraining. This training will enable plaintiff to return to some form of gainful employment. Dr. Smith is of the opinion plaintiffs work with vocational rehabilitation consultants hired by defendant have not assisted her in dealing with her difficulties.
21. William H. Bagley, safety manager for the defendant for ten (10) years, indicated defendants plan to produce 33,000 tires a day and most jobs in the facility were of a repetitive nature.
22. The offer of a job as the fischer cutter was inappropriate for plaintiff because it did not comply with the restrictions defined by her treating physician.
23. The vocational rehabilitation provided by defendant did not enhance plaintiffs perception that defendant was attempting to assist her in returning her to work. On the contrary, plaintiff was left with a great deal of angry, frustration and depression as a result of these activities.
24. Plaintiff declined the gate guard position at defendants plant because of the negative feeling she had about job placement. This job was provided by a third party to defendant and required plaintiff to police former employees.
25. Form 24 approved on July 2, 1998 was based upon plaintiffs failure to accept jobs offered by defendant and approved by Dr. Ward. Dr. Ward was an independent medical examiner and did not benefit from the long-term treatment of treating physicians. The approval of the Form 24 was not based upon the total evidence.
26. Plaintiff suffers from an occupational disease bilateral carpal tunnel syndrome as a result of her employment with defendant-employer and is a new disease separate from the prior occupational disease plaintiff contracted in 1991. Plaintiff had fully recovered from that disease at the time she contracted carpal tunnel syndrome in 1995.
27. Plaintiff is entitled to the maximum compensation rate for 1995 of $478.00.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs acquisition and contraction of bilateral carpal tunnel syndrome was due to causes and conditions characteristic of and peculiar to her employment with defendant and is not an ordinary disease of life to which the general public not so employed is equally exposed and is therefore, an occupational disease. G.S. 97-53(13).
2. Plaintiffs average weekly wage is based upon the maximum compensation rate of 1995 which is $478.00. G.S. 97-2.
3. Plaintiff justifiably refused the fischer bias operator job and the filler C/U operator job. Both of these jobs were not suitable based upon plaintiffs condition and her restrictions. G.S. 97-32.
4. Plaintiff is entitled to receive medical treatment for her occupational disease and the resulting depression and anxiety so long as said treatment should effectuate a cure, give relief or lessen plaintiffs period of disability. G.S. 97-25.
5. The Form 24 approved by Special Deputy Commissioner James C. Gillen on 17 August 1998 was improvidently filed. Plaintiffs compensation should be reinstated at the proper rate and shall remain in effect until further Order from this Commission. G.S. 97-29.
6. Defendant is entitled to a credit for benefits that have been paid previously based upon the lower compensation rate. G.S. 97-47.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her compensable contraction of an occupational disease, defendant shall pay temporary total disability compensation at a rate of $478.00 from 11 July 1995 until further Order from this Commission. All compensation is due and payable shall be paid in a lump sum subject to the credit for defendants and an attorneys fee. Defendant is entitled to a credit for the compensation which has been paid previously at a lower rate. Said compensation is subject to a reasonable attorneys fee approved in Paragraph 3.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable contraction of her occupational disease and the resulting anxiety and depression.
3. A reasonable attorneys fee of twenty-five (25%) percent of compensation due plaintiff under paragraph 1 of this award is approved for plaintiffs counsel and shall be paid as follows: twenty-five (25%) percent of the sum due plaintiff under paragraphs 1 of this award shall be deducted from that sum and paid directly to plaintiffs counsel. In regards to future compensation, plaintiffs counsel shall receive every fourth check.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER